United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DANIEL RODRIGUEZ,

        Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

        Defendant.

_____/

No. C-09-2668 MMC

**ORDER DENYING DEFENDANT'S
CROSS-MOTION FOR SUMMARY
JUDGMENT; GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND REMANDING ACTION FOR
FURTHER PROCEEDINGS**

        Before the Court are plaintiff Daniel Rodriguez's ("Rodriguez") Motion for Summary

Judgment and defendant Michael Astrue's ("the Commissioner") Cross-Motion for

Summary Judgment on Rodriguez's claim that he was wrongfully denied Supplemental

Security Income ("SSI") benefits.  Having read and considered the parties' respective

motions and the administrative record, the Court rules as follows.

**BACKGROUND**

        Rodriguez, a Cuban national, was paroled into the United States on March 13, 1968,

at the age of 19.  (See Administrative Record ("AR") 16.)[1]  In 1995, Rodriguez began

receiving SSI benefits on the basis of a disability and received such benefits through at

_____

        [1]The administrative record was filed by the Commissioner on December 16, 2009.

least August 22, 1996.  (See AR 16, 62.)[2]  Rodriguez was placed in deportation

proceedings on August 25, 1997, and he became subject to a final "Order of Deportation"

on April 16, 1998.  (See AR 57-58.)  On December 27, 2001, Rodriguez re-applied for SSI

benefits,[3] which application the Social Security Administration ("SSA") denied.  (See AR

13.)  On review, an Administrative Law Judge ("ALJ") found Rodriguez was disabled by

reason of schizophrenia, and remanded his application to the SSA to determine whether

Rodriguez met the "nondisability requirements" for SSI.  (See AR 52.)  On remand, the

SSA denied Rodriguez's claim, finding Rodriguez "did not meet the requirements for alien

residency."  (See AR 13, 62-63.)  Rodriguez again sought review, and the ALJ, in a

decision dated February 23, 2007, found Rodriguez did "not meet the alien status

requirements for eligibility for [SSI]."  (See AR 18.)  On June 10, 2009, the Appeals Council

denied Rodriguez's request for review.  (See AR 2.)  Thereafter, Rodriguez filed the instant

action seeking judicial review of the ALJ's decision.

**DISCUSSION**

In general, aliens are not eligible to receive federal public benefits, including SSI

benefits.  See 8 U.S.C. §§ 1611(a), 1612(a).  A disabled alien, however, may be eligible for

SSI benefits under two exceptions.

First, a disabled alien who is a "qualified alien" within the meaning of 8 U.S.C.

§ 1641 is, under certain circumstances, eligible fo such benefits.  See 8 U.S.C.

§ 1612(a)(2)(F).  Here, the ALJ found Rodriguez is not a "qualified alien" (see AR 14-16,

18), and the Court agrees.  As noted, Rodriguez is subject to a final Order of Deportation,

and none of the "qualified alien" definitions encompasses a person subject to such an

order.  See 8 U.S.C. § 1641.

---

[2] Rodriguez's benefits were "suspended" during the time he was "incarcerated in a public institution" from January 10, 1996 to July 8, 1996.  (See AR 16.)

[3] Other than the above-referenced period of suspension, the administrative record contains no indication as to the time(s) at which Rodriguez had not been receiving SSI benefits.

2

1    Second, a disabled alien who is not a "qualified alien" but was receiving SSI benefits

2    on August 22, 1996, is eligible for SSI benefits, see 8 U.S.C. § 1611(b)(5), if the alien is

3    "permanently residing in the United States under color of law" ("PRUCOL"), see 20 C.F.R. §

4    416.202(b)(3).  The Code of Federal Regulations identifies seventeen "categories of aliens

5    who are permanently residing in the United States under color of law."  See 20 C.F.R. §

6    416.1618(b).  Here, the SSA found Rodriguez met the requirements for PRUCOL status

7    under the definition set forth in § 416.1618(b)(13), specifically, that Rodriguez had "entered

8    and continuously resided in the United States since before January 1, 1972," see 20 C.F.R.

9    § 416.1618(b)(13), but then found his claim subject to denial because he was a "deportee."

10   (See AR 62.)[4]

11   The ALJ denied Rodriguez's claim for a different reason than that given by the SSA.

12   First, the ALJ acknowledged that, pursuant to § 416.1618, an alien who is PRUCOL is

13   eligible for SSI benefits.  (See AR 17.)  The ALJ next noted that the definition of PRUCOL

14   includes persons who are "residing in the United States pursuant to an indefinite stay of

15   deportation," see 20 C.F.R. § 416.1618(b)(3), but then determined Rodriguez had failed to

16   show he was PRUCOL or otherwise eligible for SSI benefits.  (See AR 17.)

17   The ALJ's denial of Rodriguez's application for SSI benefits, which denial followed

18   the ALJ's citation to § 416.1618(b)(3), necessarily indicates a finding that Rodriguez had

19   failed to show he was subject to an indefinite stay of deportation.  The ALJ's order does not

20   address, however, Rodriguez's eligibility for PRUCOL status under any other PRUCOL

21   category.  As noted, the SSA found Rodriguez was, at least during some period of time,

22

23    [4]The SSA's latter finding appears to be incorrect.  Although a person who is in fact
deported is ineligible for SSI benefits, see 42 U.S.C. § 402(n)(1); Martello v. Bowen, 803

24   F.2d 851, 852-53 (5th Cir. 1986) (holding payment of social security benefits "precluded"
where claimant "has been deported"), Rodriguez does not appear to be a "deportee," see

25   POMS GN 00303.500A.2 (precluding payment of benefits to "deportee[s]"), because he
has not been deported.  To the extent the SSA may have concluded that a person who has

26   not been deported, but who is subject to a final order of deportation, is per se ineligible for
SSI benefits, the SSA cited to no authority for such proposition, nor has the Court

27   otherwise been apprised of such authority.  Because, as discussed below, the ALJ denied
Rodriguez's claim for a different reason, the Court does not further address the SSA's

28   reasoning herein.

1   PRUCOL under the definition set forth in § 416.1618(b)(13); the ALJ did not address the

2   continued applicability of such subsection.  Further, the ALJ did not address the

3   applicability of § 416.1618(b)(17), which provides that an alien is PRUCOL if he is "living in

4   the United States with the knowledge and permission of the Immigration and Naturalization

5   Service and whose departure that agency does not contemplate enforcing."  See 20 C.F.R.

6   § 416.1618(b)(17).  In connection with his hearing before the ALJ, Rodriguez, who

7   proceeded pro se, submitted evidence that the United States has, for a number of years,

8   issued him work authorization cards.  (See, e.g, AR 9, 70, 73.)  An alien subject to a final

9   order of deportation, such as Rodriguez, may only receive a work authorization card if "the

10   Attorney General makes a specific finding that – (A) the alien cannot be removed due to

11   the refusal of all countries designated by the alien or under this section to receive the alien,

12   or (B) the removal of the alien is otherwise impracticable or contrary to public interest."

13   See 8 U.S.C. § 1231(a)(7).  The repeated findings by the Attorney General that Rodriguez

14   is entitled to a work authorization card suggest the United States does not contemplate

15   enforcing Rodriguez's departure, due to a refusal by Cuba and all other relevant countries

16   to receive him.[5]

17          Under such circumstances, the Court finds the ALJ's determination as to

18   Rodriguez's ineligibility for SSI benefits is not sufficiently supported in his decision, and,

19   accordingly, will grant Rodriguez's motion, deny the Commissioner's cross-motion, and

20   remand the matter for further consideration of whether Rodriguez is eligible as an alien

21   permanently residing in the United States under color of law.

22   //

23   _____

24          [5]The Court notes that the administrative record does include, as part of a document
     prepared for the SSA by an employee of the Department of Justice, a page containing
25   illegible handwriting.  (See AR 61.)  Neither the SSA nor the ALJ, nor either party to the
     instant action, has cited to such entry.  Consequently, although the entry appears to relate
26   to an inquiry regarding the Department of Homeland Security's intentions as to Rodriguez's
     deportation order, the Court assumes such illegible notation has no bearing on the issue of
27   whether Rodriguez is or is not entitled to SSI benefits.  If either party is of the view that the
     content of such page is dispositive of the issue, that party may produce a legible copy and
28   seek reconsideration of the instant order.

**CONCLUSION**

For the reasons stated above, Rodriguez's motion for summary judgment is hereby GRANTED, the Commissioner's cross-motion is hereby DENIED, and the matter is hereby REMANDED to the Commissioner for further proceedings consistent herewith.

**IT IS SO ORDERED.**

Dated:  December 6, 2010

MAXINE M. CHESNEY
United States District Judge

5